CHARLOTTE-MECKLENBURG HOSPITAL AUTHORITY, DUKE UNIVERSITY MED-
ICAL CENTER, MISSION HOSPITALS, INC. MOSES CONE HEALTH SYSTEM,
NORTH CAROLINA BAPTIST HOSPITAL, WAKEMED MEDICAL CENTER,
PLAINTIFFS v. NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN
SERVICES, ITS DIVISION OF MEDICAL ASSISTANCE, AND CARMEN HOOKER
ODOM, MARK T. BENTON, CARLEEN MASSEY, AND GEOFF ELTING IN THEIR
OFFICIAL CAPACITIES; DEFENDANTS

No. COA09-9

(Filed 17 November 2009)

## 1. Public Assistance— Medicaid—Medicare as third-party provider

The trial court did not err by concluding that the Division of
Medical Assistance (which administers North Carolina's Medic-
aid program) had the authority to recoup money from hospitals
where third-party payment sources such as Medicare were avail-
able. The hospitals bear the responsibility for pursuing payment
from Medicare, and the court's declaratory judgment granting
summary judgment for defendants was affirmed.

## 2. Constitutional Law— recovery of Medicaid payments—no federal right—no property interest

The trial court did not err by concluding that plaintiffs had
neither a constitutional nor a contractual cause of action in a
case arising from the State's attempt to recover from providers
Medicaid amounts which had been billed to and paid by the State,
but which were eligible for payment by Medicare. The providers
had neither a federal right nor a property interest.

Appeal by plaintiffs from an order entered 17 September 2008 by
Judge Orlando F. Hudson, Jr. in Wake County Superior Court. Heard
in the Court of Appeals 19 August 2009.

*Ott Cone & Redpath, P.A., by Thomas E. Cone, for plaintiffs-*
*appellants.*

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney*
*General Gerald K. Robbins and Assistant Attorney General*
*Brenda Eaddy, for defendants-appellees.*

JACKSON, Judge.

Charlotte-Mecklenburg Hospital Authority; Duke University
Medical Center, Mission Hospitals, Inc.; Moses Cone Health System,

CHARLOTTE-MECKLENBURG HOSP. AUTH. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[201 N.C. App. 70 (2009)]

North Carolina Baptist Hospital; and Wake Medical Center (collectively, "plaintiffs") appeal from a declaratory judgment order granting summary judgment in favor of North Carolina Department of Health and Human Services ("NCDHHS"); its Division of Medical Assistance ("DMA"); and Carmen Hooker Odom, Mark T. Benton, Carleen Massey, and Geoff Elting in their official capacities (collectively, "defendants"). For the reasons set forth below, we affirm.

The material facts of the case *sub judice* are not in dispute. Plaintiffs operate not-for-profit hospitals in North Carolina and provide medical services to North Carolina Medicaid recipients pursuant to contractual agreements with defendants. Plaintiffs also provide medical services to Medicare recipients pursuant to contractual agreements with the federal Medicare program.

NCDHHS is an administrative agency of the State of North Carolina and is responsible for meeting the human service needs of portions of North Carolina's population. NCDHHS supervises the administration of North Carolina's Medicaid program. DMA is a division of NCDHHS and is responsible for administering the State's Medicaid program.

In 2005, defendants contracted with Health Management Systems, Inc. ("HMS") to identify hospital services which had been billed to and paid for by Medicaid, but for which potential third-party payment sources, including Medicare, also were available.

On 26 October 2005, DMA mailed to plaintiffs lists compiled by HMS of accounts for which Medicaid had been billed and paid, but which were eligible for payment by Medicare. The letters advised plaintiffs to review their records, to submit bills to Medicare, and to send a refund to DMA within sixty days. If plaintiffs failed to bill Medicare or to advise HMS of the reasons for which plaintiffs could not recover payments from Medicare, DMA would recoup funds it had paid through Medicaid that Medicare should have paid or could pay.

Plaintiffs objected to reviewing their records and submitting bills to Medicare as an alternative means of payment for the accounts identified by the HMS lists. On 19 December 2005, plaintiffs filed an action seeking a declaratory judgment to declare defendants' actions to be contrary to law, null, and void. On 30 July 2008 and 31 July 2008, plaintiffs and defendants, respectively, filed motions for summary judgment accompanied by supporting affidavits and discovery. On 17 September 2008, the trial court entered a declaratory judgment order

CHARLOTTE-MECKLENBURG HOSP. AUTH. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[201 N.C. App. 70 (2009)]

in defendants' favor and granted defendants' motion for summary judgment. From the trial court's order, plaintiffs appeal.

Previously, we have held that "summary judgment is an appropriate procedure in a declaratory judgment action." *Montgomery v. Hinton*, 45 N.C. App. 271, 273, 262 S.E.2d 697, 698 (1980) (citations omitted). *See also Hejl v. Hood, Hargett & Assocs.*, —— N.C. App. ——, ——, 674 S.E.2d 425, 427 (2009). In reviewing an order for summary judgment, this Court must make a two-step determination as to whether "(1) the relevant evidence establishes the absence of a genuine issue as to any material fact, and (2) either party is entitled to judgment as a matter of law." *Guthrie v. Conroy*, 152 N.C. App. 15, 21, 567 S.E.2d 403, 408 (2002) (citing *Von Viczay v. Thoms*, 140 N.C. App. 737, 738, 538 S.E.2d 629, 630 (2000), *aff'd*, 353 N.C. 445, 545 S.E.2d 210 (2001) (per curiam)). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2007). By submitting cross-motions for summary judgment, the parties have effectively conceded that there is no genuine issue of material fact. *See Erie Ins. Exch. v. St. Stephen's Episcopal Church*, 153 N.C. App. 709, 711, 570 S.E.2d 763, 765 (2002). Therefore, we need only determine which party is entitled to judgment as a matter of law.

[1] On appeal, plaintiffs argue that the trial court erred in concluding that DMA has the authority to recoup money from hospitals when the underlying Medicaid claims properly had been billed and paid and that the trial court erred in concluding that the hospitals bear the responsibility for pursuing payment from Medicare as a third-party payor after properly accepting Medicaid as payment in full as required by State and federal law. We disagree. Because plaintiffs' arguments require analysis of substantially interrelated rules, we address together both questions presented.

" '[A]n administrative agency is a creature of the statute creating it and has only those powers expressly granted to it or those powers included by necessary implication from the legislature [sic] grant of authority.' " *Boston v. N.C. Private Protective Services Bd.*, 96 N.C. App. 204, 207, 385 S.E.2d 148, 150-51 (1989) (quoting *In re Williams*, 58 N.C. App. 273, 279, 293 S.E.2d 680, 685 (1982)). In performing its function, the power of an agency to interpret a statute that it administers is limited by the actions of the legislature. *See, e.g., Chevron U.S.A. v. Natural Res. Def. Council*, 467 U.S. 837, 842-43, 81 L. Ed. 2d

IN THE COURT OF APPEALS 73

CHARLOTTE-MECKLENBURG HOSP. AUTH. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[201 N.C. App. 70 (2009)]

694, 703 (1984); *see also Watson Industries v. Shaw, Comr. of Revenue,* 235 N.C. 203, 211, 69 S.E.2d 505, 511 (1952). If the legislature unambiguously expressed its intent in the statute, then the agency administering that statute must give effect to that intent. *See N.C. Comm'r of Labor v. Weekley Homes, L.P.,* 169 N.C. App. 17, 22-23, 609 S.E.2d 407, 412 (2005) (citing *Chevron,* 467 U.S. at 842-43, 81 L. Ed. 2d at 703). But, if the legislature was silent or ambiguous on the specific issue, then the agency has room to construe the statute. *See id.* " 'Although the interpretation of a statute by an agency created to administer that statute is traditionally accorded some deference by appellate courts, those interpretations are not binding.' " *Martin v. N.C. Dep't of Health & Hum. Servs.,* 194 N.C. App. 716, 719, 670 S.E.2d 629, 632 (2009) (quoting *Total Renal Care of N.C., L.L.C. v. N.C. Dep't of Health & Hum. Servs.,* 171 N.C. App. 734, 740, 615 S.E.2d 81, 85 (2005)). " 'The weight of [an administrative agency's] interpretation in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.' " *Id.* (quoting *Total Renal Care of N.C., L.L.C. v. N.C. Dep't of Health & Hum. Servs.,* 171 N.C. App. 734, 740, 615 S.E.2d 81, 85 (2005)).

Under Medicare Part A, the federal government makes payments to "providers of services" for services provided to Medicare beneficiaries. 42 U.S.C. § 1395f(a) (2000). A "provider of services" is a statutorily defined term that includes hospitals and other specified medical facilities. 42 U.S.C. § 1395x(u) (2000). Section 1395f(a)(1) delegates to the Secretary of Health and Human Services ("the Secretary") the authority to determine who may file claims under such agreements:

Except as provided in subsections (d) and (g) and in section 1395mm . . . , payment for services furnished an individual may be made only to providers of services which are eligible therefore under section 1395cc of this title and only if —

(1) written request . . . is filed for such payment in such form, in such manner, and by such person or persons as the Secretary may by regulation prescribe . . . .

42 U.S.C. § 1395f(a)(1) (2000).

Federal regulations promulgated by the Secretary require that all initial claims for payment for medical services pursuant to Part A of

CHARLOTTE-MECKLENBURG HOSP. AUTH. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[201 N.C. App. 70 (2009)]

the Medicaid program be submitted by the providers of those services. 42 C.F.R. § 424.33 (2005). The Secretary has defined "provider" as follows:

> Provider means a hospital, a [critical access hospital], a skilled nursing facility, a comprehensive outpatient rehabilitation facility, a home health agency, or a hospice that has in effect an agreement to participate in Medicare, or a clinic, a rehabilitation agency, or a public health agency that has in effect a similar agreement but only to furnish outpatient physical therapy or speech pathology services, or a community mental health center that has in effect a similar agreement but only to furnish partial hospitalization services.

42 C.F.R. § 400.202 (2005). The requirement applies whether payment is sought in the first instance pursuant to Medicare or whether payment is sought pursuant to Medicare for claims that previously were paid by Medicaid.

At times relevant to the actions in the case *sub judice*[1], North Carolina General Statutes, section 108A-54 gave NCDHHS broad authority to enact rules, regulations, policies and procedures to effectuate the purpose of the Medicaid program, and to direct how payments are to be made. *See* N.C. Gen. Stat. § 108A-54 (2005). DMA has been empowered by State regulation to establish "methods and procedures to ensure the integrity of the Medicaid program." 10A N.C. Admin. Code 22F.0101 (2004). The DMA's program integrity section periodically conducts post-payment reviews or audits of claims submitted by Medicaid providers to DMA and reviews payments made to Medicaid providers. *See* 10A N.C. Admin. Code 22F.0102, .0103, .0105 (2004).

The Social Security Act, the enabling statute for medical assistance programs, mandates that State Medicaid agencies ascertain the liability of third parties and seek reimbursement for such assistance. 42 U.S.C. § 1396a(a)(25)(A),(B) (2000). "Thus, on its face, [the Social Security Act] seeks to protect the Medicaid program from paying for health care in situations where a third party has a legal obligation to pay for the care." *Wesley Health Care Ctr., Inc. v. DeBuono*, 244 F.3d 280, 284 (2d Cir. 2001).

Additionally, federal regulations mandate that each State Medicaid program set up procedures to assess "[t]he legal liability of third parties to pay for services provided under the plan[.]" 42 C.F.R.

---

1. We note that the material portions of the provisions cited remain in effect.

CHARLOTTE-MECKLENBURG HOSP. AUTH. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[201 N.C. App. 70 (2009)]

§ 433.135(a) (2005). A third party is broadly defined as "any individual, entity or program that is or may be liable to pay all or part of the expenditures for medical assistance furnished under a State plan." 42 C.F.R. § 433.136 (2005). In North Carolina, the DMA's third party recovery section is responsible for carrying out this requirement. This section's purpose is to ensure that Medicaid covers medical expenses only after all other available medical insurance has been applied and exhausted. This is because Medicaid is a "payor of last resort." *Duke Univ. Med. Ctr. v. Bruton*, 134 N.C. App. 39, 44, 516 S.E.2d 633, 636 (1999) (quoting *Virginia, Inc., v. Kozlowski et al.*, 42 F.3d 1444, 1448 (4th Cir. 1994)).

However, federal regulations also require "state agencies [to] pay the full Medicaid benefits when [p]robable [third-party] liability is not established or benefits are not available at the time the claim is filed." *Bruton*, 134 N.C. App. at 49, 516 S.E.2d at 639 (citing 42 C.F.R. § 433.139(c)) (internal quotation marks omitted). " 'If the probable existence of third party liability cannot be established or third party benefits are not available to pay the recipient's medical expenses at the time the claim is filed, the agency must pay the full amount allowed under the agency's payment schedule.' " *Id.* (quoting 42 C.F.R. § 433.139(c)).

In the case *sub judice*, the regulations, by their plain terms, require that any claim for payment under Medicare Part A be submitted by the provider of services. 42 C.F.R. § 424.33 (2005). Other sources within the Medicare statute support this requirement. The statutory section that authorizes the Secretary to establish the claims-filing procedures for Part B services furnished by providers, *see* 42 U.S.C. § 1395n (2000), is titled "Procedure for payment of claims of *provider of services*." *Id.* (emphasis added). This heading reflects Congress's intent that the power to file a claim for payment belongs to the provider and, thus, may be filed only by the provider. *See* 42 U.S.C. § 1395f(a) (2000); 42 U.S.C. § 1395n (2000); 42 C.F.R. § 400.202 (2005); 42 C.F.R. § 424.33 (2005). Similarly, the statute directs that a Part A payment must be made to the provider, 42 U.S.C. § 1395f(a) (2000), and that such payment may not be made to any other person under an assignment or power of attorney, except in specific circumstances inapplicable to the case *sub judice*. *See* 42 U.S.C. § 1395g(c) (2000). Accordingly, the claim must be filed by the provider.

Such regulations are a reasonable interpretation of the Medicare statutes pursuant to an explicit congressional delegation of rule-mak-

CHARLOTTE-MECKLENBURG HOSP. AUTH. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[201 N.C. App. 70 (2009)]

ing authority. *See* 42 U.S.C. § 1395f(a)(1) (2000) (stating "by such person or persons as the Secretary may by regulation prescribe"). Because the agency's interpretation was "a reasonable and permissible construction of the statute[,]" we give deference to the agency's interpretation. *See N.C. Comm'r of Labor*, 169 N.C. App. at 22, 609 S.E.2d at 412 (citation omitted).

However, plaintiffs contend that United States Code, Title 42, section 1396a(a)(25)(B), a provision within the Medicaid statutes, overrides the Medicare claims-filing requirements and obligates DMA to file claims with the Secretary upon discovery that Medicare initially should have paid a claim previously paid by DMA. *See* 42 U.S.C. § 1396a(a)(25)(B) (2000). Section 1396a(a)(25)(B) of the Medicaid statute provides,

> in any case where [third-party] legal liability is found to exist after medical assistance [pursuant to the Medicaid statutes] has been made available on behalf of the individual and where the amount of reimbursement the State can reasonably expect to recover exceeds the costs of such recovery, the State or local agency will seek reimbursement for such assistance to the extent of such legal liability[.]

*Id.*

Plaintiffs' argument is unpersuasive because nothing in this provision suggests that Congress intended to authorize the States to override the claims-filing requirements of Medicare. If Congress had intended this result, we must presume it would have used stronger and more explicit language than "seek reimbursement" to indicate clearly that the State should seek reimbursement directly from the Secretary. Congress could have expressed its intent to override the claims-filing requirements of Medicare and other third parties with explicit language, which it used in other provisions. *See* 42 U.S.C. § 1395y(b)(2)(B)(vi) (Supp. 2004) (authorizing Medicare to recover its conditional payments from a primary employer group health plan within a three year period "[n]otwithstanding any other time limits . . . for filing a claim" established by such plan). Congress also could have provided the States with the same independent right of recovery available to the United States under the Medical Care Recovery Act. *See* 42 U.S.C. § 2651(a) (2000) ("[T]he United States shall have a right to recover (independent of the rights of the injured or diseased person) from said third person, or that person's insurer . . . ."). However, no such indication of legislative intent can be found within section 1396a(a)(25)(B).

CHARLOTTE-MECKLENBURG HOSP. AUTH. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[201 N.C. App. 70 (2009)]

Furthermore, when viewed in conjunction with similar provisions found elsewhere in the Medicaid statute, section 1396a(a)(25)(B) mandates the conclusion that its concern is not with overriding claims-filing requirements of the Medicare program or other third parties, but rather with ensuring that the rights of Medicaid beneficiaries are subrogated to the States. *See* 42 U.S.C. § 1396a(a)(25)(B) (2000). In particular, section 1396a(a)(25)(B) must be read in conjunction with section 1396k(a)(1)(A), which requires each Medicaid recipient "to assign the State [his or her] rights" to payment for medical care from a third party as a condition of eligibility for medical assistance under a State Medicaid plan. *See also* 42 U.S.C. §§ 1396a(a)(25)(H), 1396a(a)(45) (2000). The most logical reading of these two sections is not that they authorize the States to override the claims-filing requirements of Medicare and other third parties, but rather that their provisions merely require the States to "stand in the shoes" of their recipients; that is, to seek reimbursement from liable third parties in accordance with whatever rights the recipients would have had to obtain such reimbursement. *See Commonwealth v. Philip Morris, Inc.*, 942 F. Supp. 690, 695 n.5 (D. Mass. 1996) ("What Title XIX requires is that States take steps to stand in the legal shoes of Medicaid recipients who have valid claims for medical expenses against third parties."). *See also Michigan Dep't of Soc. Servs. v. Shalala*, 859 F. Supp. 1113, 1121 (W.D. Mich. 1994) ("DSS, as subrogee, obtained no greater rights than the beneficiaries, and may obtain reimbursement [from Medicare] only upon timely filed claims.").

The interplay between the Medicare and Medicaid statutes as they apply to dual-eligibles[2] and the applicable regulations make clear that only providers of services can submit Medicare reimbursement claims on behalf of Medicaid recipients later determined to be eligible for Medicare. Since DMA does not meet the statutory or regulatory definition of "provider of services," it cannot submit claims pursuant to Medicare Part A. *See* 42 U.S.C. § 1395x(u) (2000); 42 C.F.R. § 400.202 (2005).

However, as the Director of the Department of Health & Human Services, Center for Medicaid and State Operations explained in State Medicaid Director Letter # 03-004,

neither the Medicare nor Medicaid statute, nor [D]HHS's regulations or policies prohibit any state from recouping its Medicaid

---

2. People who are beneficiaries under both Medicare and Medicaid are referred to as "dual eligibles." *Bruton*, 134 N.C. App. at 43, 516 S.E.2d at 636.

78 IN THE COURT OF APPEALS

CHARLOTTE-MECKLENBURG HOSP. AUTH. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[201 N.C. App. 70 (2009)]

payment from providers in the situation where: . . . (2) a . . . state (as the beneficiary's subrogee) timely requests the provider to file a claim with Medicare and the provider fails to submit timely a claim to Medicare for the service at issue . . . .

State Medicaid Director Letter, # 03-004 (2003). Additionally, the Medicare statute that specifies the contents of provider agreements, states in relevant part that a Medicare provider must agree

not to charge . . . any individual or any other person for items or services for which such individual is entitled to have payment made under [Medicare] (or for which he would be so entitled if such provider of services had complied with the procedural and other requirements under or pursuant to [the Medicare statute]).

42 U.S.C. § 1395cc(a)(1)(A) (2000).

Where, as here, a State determines that it has paid for services for which Medicare coverage is available, it can request the provider to submit a claim for payment under Medicare. If the fiscal intermediary approves the claim, the provider then will be obligated pursuant to its Medicare provider agreement to refund the Medicaid payment to the State. *See, e.g., Conn. Dep't of Social Servs. v. Leavitt*, 428 F.3d 138, 142 (2d Cir. 2005) ("When Medicare covers services already paid for by Medicaid, Medicare pays the provider for the services, and then Medicaid can seek reimbursement from the provider for Medicaid's initial erroneous payment.").

Since DMA is not a "provider of services," it may not file a claim with Medicare. Instead, the statutory and regulatory framework requires that Medicare claims be submitted by the providers of services. Consequently, summary judgment in favor of defendants was appropriate in this matter because defendants proved that an essential element of plaintiffs' claim—that DMA must recover third party payment for claims directly from Medicare—is not consistent with applicable law. *See Guthrie*, 152 N.C. App. at 21, 567 S.E.2d at 408.

Plaintiffs also argue that the responsibility for pursuit of third-party payments falls to the State. Plaintiffs and defendants have ratified the "payor of last resort" concept in the contractual agreement these hospitals signed in order to become Medicaid providers in the North Carolina Medicaid program. Specifically, in paragraph A.8 of each provider's Medicaid participation agreement, each plaintiff agreed to "[d]etermine responsibility and bill all appropriate third parties prior to billing the Medicaid Program." The North Carolina

CHARLOTTE-MECKLENBURG HOSP. AUTH. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[201 N.C. App. 70 (2009)]

State Medicaid Plan sets forth how DMA, in conjunction with assistance from Medicaid providers upon their initial payment request submission to DMA, identifies third-party resources. State regulations allow DMA to recover improper payments as appropriate, 10A N.C. Admin. Code 22F, *et seq.*, and the North Carolina Medicaid Participation Agreement signed by Medicaid providers allows DMA to recover overpayments.

In many instances, as in the case *sub judice*, the third-party payor does not pay the Medicaid recipient's bill for medical services before DMA applies Medicaid funds to the medical bill. The "payor of last resort" rules require that all other available insurance should be identified, applied, and exhausted before Medicaid's final responsibility for payment for medical services is established. Therefore, it would not be unusual for a Medicaid provider to pay back Medicaid funds it received on a claim to DMA. Plaintiffs' contention that, once plaintiffs are paid, plaintiffs cannot return funds to DMA, is contrary to both federal and State regulation as well as the program integrity mandate.

Accordingly, we hold that the trial court did not err in concluding that DMA has the authority to recoup money from hospitals when the underlying Medicaid claims properly had been billed and paid and that the hospitals bear the responsibility to pursue payment from Medicare as a third-party payor after properly accepting Medicaid as payment in full as required by State and federal law.

[2] Next, plaintiffs contend that the trial court erred in concluding that plaintiffs had neither a constitutional nor a contractual cause of action. We disagree.

Pursuant to United States Code, Title 42, section 1983, an injured party has the power to seek redress for a violation of that party's federal rights by a State or a State agent. 42 U.S.C. § 1983 (2000); *Gilbert v. N.C. State Bar*, 363 N.C. 70, 80, 678 S.E.2d 602, 608 (2009). Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

CHARLOTTE-MECKLENBURG HOSP. AUTH. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[201 N.C. App. 70 (2009)]

42 U.S.C. § 1983 (2000). However, the violation of a federal statute alone does not raise a basis for a section 1983 claim. *Blessing v. Freestone*, 520 U.S. 329, 340, 137 L. Ed. 2d 569, 581-82 (1997). The violation of federal law also must implicate a federal right possessed by the appellant. *Id.* The appellant must satisfy a three-part test to show that a federal statute created a federal right. *DeBuono*, 244 F.3d at 283.

> First, Congress must have intended that the provision in question benefit the [appellant]. Second, the [appellant] must demonstrate that the right assertedly protected by the statute is not so vague and amorphous that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States.

*Id.* at 283-84 (internal citations and quotation marks omitted).

In the case *sub judice*, the statute at issue is United States Code, Title 42, sections 1396a(a)(25)(A) and (B). Since section 1396a(a)(25) "does not confer a federal right under 42 U.S.C. § 1983 upon health care providers," plaintiffs do not have a viable federal claim cognizable under Title 42, section 1983 of the United States Code. *See DeBuono*, 244 F.3d at 283. The purpose of the third-party liability provisions of the Medicaid Act was "to protect the Medicaid program from paying for health care in situations where a third party has a legal obligation to pay for the care." *Id.* at 284. In the instant case, DMA is attempting to ensure that plaintiffs—all Medicare and Medicaid providers—comply with their obligations to bill Medicare for appropriate claims. DMA is protecting itself from paying for health care when a third party has a legal obligation to pay. Since plaintiffs do not possess a federal right here, their section 1983 claim fails.

Additionally, there was no taking of a property interest. The Medicaid recipient is required to assign his right to medical insurance proceeds to the State. *Bruton*, 134 N.C. App. at 48, 516 S.E.2d at 639 (citing 42 U.S.C. § 1396k(a)(1)(A) (2000)). This assignment of rights grants the State an interest superior to that of the provider. *DeBuono*, 244 F.3d at 285. Thus, plaintiffs have no right to hold DMA to the terms of its contracts under North Carolina law.

Accordingly, we hold that the trial court did not err in concluding that plaintiffs had neither a constitutional nor a contractual cause of action.

Finally, plaintiffs argue that the trial court erred by admitting into evidence an affidavit by Diana Pirozzi and related materials. However, at oral argument, counsel for plaintiffs conceded that the contested evidence does not create a genuine issue of material fact. Accordingly, we do not address the issue on appeal.

For the foregoing reasons, the trial court's declaratory judgment order granting summary judgment in defendants' favor is affirmed.

Affirmed.

Judges McGEE and ERVIN concur.